John J. Copelan, Jr. Broward County Attorney
QUESTION:
1. May the county deduct the costs of collecting from the revenues of the additional occupational license tax imposed pursuant to s.205.033(6)(1), F.S., before forwarding such revenues to the agency designated to receive such funds?
2. If the county is prohibited from deduction such costs, may the county enter into an agreement with the agency designated to receive such revenues for the reimbursement of such costs?
3. If the county may enter into such an agreement, may such an agreement be dated retroactively to the date the additional occupational license tax was first imposed?
SUMMARY:
1. The county is not authorized to deduct the cost of collection from the revenues of the additional occupational license tax imposed pursuant to s. 205.033(6)(a), F.S., before forwarding such revenues to the agency designated to receive such funds.
2. The county is not authorized to enter into an agreement with the agency receiving such revenues to be reimbursed for the costs of collection form such revenues.
3. In light of the response to the second question, it is unnecessary to address the third inquiry.
According to your letter, the Broward County Commission has enacted an ordinance pursuant to s. 205.033(6)(a), F.S., providing for the levy and collection of an additional occupational license tax. This tax is in the amount of 50 percent of the appropriate license tax imposed pursuant to s. 205.033(1), F.S. In accordance with s. 205.033(6)(b), F.S., the ordinance provides that the additional revenue derived from the tax is not subject to subsections (4) and (5) of s. 205.033, F.S., but will be placed in a separate interest-bearing account.
The ordinance further requires that the revenue from the tax plus accrued interest will be distributed each fiscal year by the commission to the Broward Economic Development Board. Such funds are to be used by the economic development board to oversee and implement a comprehensive economic development strategy for the county through advertising , promotional activities and other sales and marketing techniques.
You further state that it is your opinion that all of the proceeds derived from the additional occupational license tax must be distributed to the economic development board. In addition, it is your opinion that the county may not enter into an agreement with the economic development board for the payment by the development board of such costs. You have apparently so advised the board of county commissioners. Based upon the following analysis, I concur in your opinion.
AS TO QUESTION 1:
Section 205.033, F.S., sets forth certain conditions for the imposition of occupational license taxes by counties. Pursuant to subsection (4) of the statute, the revenues derived from such taxes, exclusive of the costs of collection and any credit given form municipal license taxes, shall be apportioned between the unincorporated areas of the county.
The imposition of an additional license tax is authorized by s.205.033(6)(a), F.S., which provides:
 Each county, as defined in s. 125.011(1),[1] or any county adjacent thereto may levy and collect, pursuant to an ordinance enacted by the governing body of the county, an additional occupational license tax up to 50 percent of the appropriate license tax imposed pursuant to subsection (1). (e.s.)
Section 205.033(6)(b), F.S., however, clearly states that subsections (4) and (5) do not apply to any revenues derived from the additional tax imposed pursuant to subsection (6). Proceeds from this additional license tax are to be placed into a separate interest-earning account and distributed, together with the accrued interest, each fiscal year by the county to an organization designated by the county to oversee and implement a comprehensive economic development strategy.
Thus, s. 205.033(4), F.S., which appears to recognize that the costs of collection may be deducted from the occupational license tax revenues, is not applicable to the additional occupational license tax levied pursuant to s. 205.033(6), F.S. An examination of the legislative history surrounding the enactment of subsection (6) of s. 205.033, F.S., indicates that the Legislature considered the economic impact of adopting this subsection to be "primarily limited to the local government cost necessary to administer the additional collections."[2]
This office has previously stated that public officials have no legal claim for official services rendered except when and to the extent that compensation is provided by law; when no compensation is provided, the rendition of such service is deemed to be gratuitous.[3] Section 205.033(6), F.S., in authorizing a county to impose an additional occupational tax, does not provide for the costs of collection to be deducted from the additional revenues. In fact, subsection (6) specifically excludes that portion of the statute which recognizes that costs may be deducted.
Based upon the above, I am of the opinion that the county is not authorized to deduct the cost of collection from the revenues of the additional occupational license tax imposed pursuant to s.205.033(6)(a), F.S., before forwarding such revenues to the agency designated to receive such funds.
AS TO QUESTION 2:
You ask whether the county may enter into an agreement with the Broward County Economic Development Bard, the agency designated by the county to receive the revenues derived from the additional occupational license tax. Such an agreement would provide for reimbursement by the agency of the county's costs of collection of such tax.
This office has previously stated that the issuance or sale of occupational license and the collection of license taxes is the exclusive prerogative of the Legislature.[4] Thus, a county may not establish a method of selling such licenses or collecting such taxes which are in conflict with state law.
As discussed in Question One, s. 205.033(6)(b), F.S., clearly states that the provisions of s. 205.033(4), F.S., which recognize that costs may be deducted from the tax revenues, are not applicable to the additional occupational license tax imposed pursuant to subsection (6). You have not directed this office's attention to any provision authorizing the deduction of such costs from the revenues generated by the tax imposed pursuant to s.205.033(6), F.S. To permit the county to enter into a contract which provides for the reimbursement of such costs would appear to be contrary to the terms of the statute and therefore, in my opinion, impermissible. It is a general principle that public agencies may not do indirectly what they are precluded from doing directly.[5]
Accordingly, inasmuch as s. 205.033(6), F.S., does not contemplate that costs of collection be deducted from the tax revenues generated pursuant to that section, the county would be prohibited from entering into a contract to provide for the reimbursement of such funds.
AS TO QUESTION 3:
In light of this offices response to Question Two, it is unnecessary to respond to your third inquiry.
RAB/tjw
[1] Section 125.011(1), F.S., defines "County" to mean "any county operating under a home rule charter adopted pursuant to ss. 10, 11, and 24 of Art. VIII of the Constitution of 1885, as preserved by Art. VIII, S. 6(e) of the Constitution of 1968, which county , by resolution of its board of county commissioners, elects to exercise the powers herein conferred." Section 11 of Art. VIII of the 1885 Constitution provides for a home rule charter for Dade County.
[2] See, House of Representatives, Committee on Community Affairs Staff Analysis, CS/HB 835 (enacted as Ch. 85-209, Laws of Florida), dated July 10, 1985.
[3] See, e.g., AGO 67-44 (public officers may be required to perform official duties, whether or not compensation be provided therefor). And see, Gavagan v. Marshall,33 So.2d 862 (Fla. 1948); Pridgeon v. Folsom, 181 So.2d 222 (1 D.C.A. Fla., 1965) (public officers have no claim to compensation for services rendered except when and to the extent that is provided by law).
[4] See, AGO 84-65. And see, AGO 84-91 (the power and duty of a county officer to sell or issue occupational licenses and to collect occupational license taxes and his compensation therefor must be fixed by law).
[5] See, e.g., Solomon v. City of Miami Beach,187 So.2d 373 (3 D.C.A. Fla., 1966), cert. denied, 196 So.2d 927
(Fla. 1967); Green v. Galvin, 114 So.2d 87 (1 D.C.A. Fla., 1959).